**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

<u>Katie M. Bates</u>

    v.                                              Civil No. 11-cv-547-SM

<u>Private Jet Commercial Group,</u>
<u>Inc.; Private Jet Management</u>
<u>Group, Inc.; and Gregory Raiff</u>

**<u>O R D E R</u>**

Katie Bates has sued Private Jet Commercial Group, Inc.
("PJCG"), Private Jet Management Group, Inc. ("PJMG"),[1] and
Gregory Raiff, asserting claims for gender discrimination and
sexual harassment under Title VII, and state-law claims for
assault and battery, intentional infliction of emotional
distress, and vicarious liability.  The complaint alleges that
while Bates was employed by PJCG/PJMG, the companies' president,
Raiff, sexually assaulted her.  Before the court is Bates's
motion to quash subpoenas Raiff has served on: (1) a police
department that investigated Bates's allegation that Raiff
sexually assaulted her; and (2) her provider of wireless

---

[1] In the balance of this Order, the court will follow
Bates's practice of referring to the two defendant companies
collectively as "PJCG/PJMG" or "the companies."

telephone services.  In the alternative, she seeks a protective order.  For the reasons that follow, Bates's motion is denied.

## Background

The following facts are drawn largely from Bates's complaint and defendants' answer.  On January 3, 2011, Bates began her employment with PJCG/PJMG.  Those companies arrange privately chartered airplane flights.  Bates worked for them as a concierge/flight coordinator.  She alleges that on May 25, 2011, Raiff sexually assaulted her while she was working at the companies' corporate offices.  After the alleged assault, Bates filed a police report with the Seabrook Police Department ("SPD").  Following a six-month investigation of Bates's claims, the State elected not to prosecute Raiff.

Bates asserts that as a result of the alleged assault, she developed a stress-related disorder and was unable to return to work at PJCG/PJMG.  Bates filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging that the actions of Raiff and the companies constituted a constructive discharge and unlawful discrimination under Title VII of the Civil Rights Act of 1964 and chapter 354-A of the New Hampshire Revised Statutes Annotated ("RSA").  After receiving a Right to Sue letter from the EEOC, Bates commenced this action.  Raiff has filed counterclaims for false-light invasion of privacy,

defamation, and making a false statement to police.  Raiff
alleges that he and Bates had a consensual sexual relationship
and that she filed a false rape allegation against him after he
ended their relationship immediately after the sexual encounter
giving rise to Bates's claims.

In a letter dated January 31, 2012, Raiff's counsel
requested information from the SPD under New Hampshire's Right-
to-Know Law, RSA chapter 91-A.  See Pl.'s Mot. to Quash, Ex. B
(doc. no. 32-2), at 1-2.  Under cover of that letter, Raiff's
counsel also served the SPD with a subpoena directed to the
production of the investigative file that resulted from Bates's
allegation against Raiff.  See id. at 3-10.  Three days later,
Bates's counsel wrote to the SPD, stating, in pertinent part:

> Please be advised that this office, which represents
> Ms. Bates, intends to move to quash this subpoena in
> whole or in part.  It is our legal opinion that this
> subpoena is unlawful to the extent that it requests
> information that is not reasonably likely to lead to
> admissible evidence, contains confidential information
> protected by statute, attorney-client privilege, or
> doctor-patient privilege, or that otherwise may be
> wholly irrelevant to the civil action from which the
> subpoena stems.
>
> . . . .
>
> For the above mentioned reasons, we instruct you
> to not respond to this subpoena until a Court first
> orders that such documents may be produced.

Id., Ex. D (doc. no. 32-4), at 1.  Under cover of a letter dated
February 10, 2012, Raiff's counsel served a subpoena on Verizon

Cellco Partnership ("Verizon"), seeking the production of
Bates's phone records from January 1, 2011, through February 9,
2012.  See id., Ex. E (doc. no. 32-5).  Bates's counsel
responded by sending Verizon a letter similar to the above-
quoted letter she sent to the SPD.  See id., Ex. F (doc. no. 32-
6).

It does not appear that either the SPD or Verizon has
produced the documents requested in the subpoenas.  Similarly,
there is no indication that the SPD has responded to Raiff's
right-to-know request.  Before the court is a pleading from
Bates captioned "Plaintiff's Motion to Quash Defendants'
Subpoenas and Right-to-Know Request or in the Alternative for
Protective Order."

## Legal Principles

"Unless otherwise limited by court order, the scope of
discovery . . . [extends to] any nonprivileged matter that is
relevant to any party's claim or defense . . . ."  Fed. R. Civ.
P. 26(b)(1).  "Relevant information need not be admissible at
the trial if the discovery appears reasonably calculated to lead
to the discovery of admissible evidence."  Id.  "[T]he purpose
of pretrial discovery is to 'make trial less a game of
blindman's bluff and more a fair contest with the basic issues
and facts disclosed to the fullest practicable extent.'"  Wamala

4

v. City of Nashua, No. 09-cv-304-JD, 2010 WL 3746008, at *1
(D.N.H. Sept. 20, 2010) (quoting Macaulay v. Anas, 321 F.3d 45,
53 (1st Cir. 2003)).

Subpoenas, as a tool for pretrial discovery, are governed
by Rule 45 of the Federal Rules of Civil Procedure.  "A Rule 45
subpoena must fall within the scope of proper discovery under
Fed. R. Civ. P. 26(b)(1)."  Shea v. Mcgovern, Civ. Action No.
1:08-12148-MLW, 2011 WL 322652, at *3 (D. Mass. Jan. 31, 2011)
(citing Miller v. Allstate Fire & Cas. Ins. Co., No. 07-260,
2009 WL 700142, at *2 (W.D. Pa. Mar. 17, 2009)).  Moreover,
"[o]n timely motion, the issuing court must quash or modify a
subpoena that: . . . requires disclosure of privileged or other
protected matter, if no exception or waiver applies."  Fed. R.
Civ. P. 45(c)(3)(A)(iii).  Finally, "[t]he movant seeking to
quash or modify a subpoena bears the burden in obtaining the
desired remedy."  9 James Wm. Moore, Moore's Federal Practice §
45.50[2] (3d ed. 2011).

Protective orders are governed by Rule 26, which provides
that "[a] party . . . may move for a protective order in the
court where the action is pending."  Fed. R. Civ. P. 26(c)(1).
A "motion [for a protective order] must include a certification
that the movant has in good faith conferred or attempted to
confer with other affected parties in an effort to resolve the
dispute without court action."  Id.  In response to such a

motion, "[t]he court may, for good cause, issue an order to protect a party . . . from annoyance, embarrassment, oppression, or undue burden or expense."  Id.

### Discussion

Bates moves to quash both the subpoena served on the SPD and the one served on Verizon.[2]  In the alternative, she seeks a protective order.  She does not, however, provide much specificity about the terms of the order she seeks.  Finally, Bates asks the court to determine that the material Raiff seeks from the SPD pursuant to the Right-to-Know Law is exempt from disclosure under that statute.  The court considers each request for relief in turn.

A. The Subpoenas

Bates argues that she has a right to privacy in the documents Raiff has attempted to subpoena.  To establish that right, she cites a number of authorities, including various U.S.

---

[2] Bates also argues that defendants failed to comply with the notice provisions of Rule 45(b).  But, because she requests no relief based on that violation, other than "instruct[ing] Defendants to comply with the clear notice provisions" of Rule 45(b), see Pl.'s Mem. of Law (doc. no. 32-1), the court need say nothing more about that issue.

Supreme Court opinions on the right to privacy,[3] state laws protecting the privacy rights of crime victims,[4] federal and state laws protecting the confidentiality of medical records,[5] and a federal criminal statute prohibiting the sale or transfer of "confidential phone records information of a covered entity, without prior authorization from the customer to whom such confidential phone records information relates," 18 U.S.C. § 1039(b)(1).  Based on her invocation of those authorities, Bates objects to the disclosure of: (1) any documents obtained by the SPD during the course of its investigation of her complaint

---

[3] She cites Lawrence v. Texas, 539 U.S. 558, 562 (2003) (striking down as unconstitutional "a Texas statute making it a crime for two persons of the same sex to engage in certain intimate sexual conduct"), Planned Parenthood v. Casey, 505 U.S. 833, 846 (1992) (concluding that "the essential holding of Roe v. Wade should be retained and once again reaffirmed"), and Griswold v. Connecticut, 381 U.S. 479, 485 (1965) (striking down as unconstitutional Connecticut statute "forbidding the use of contraceptives").

[4] She cites RSA 21-M:8-k(II)(a) (establishing the right of "crime victims" to be "treated with fairness and respect for their dignity and privacy throughout the criminal justice process") and RSA 173-C:2 (establishing the privilege of a person alleging sexual assault to prevent the disclosure of any "confidential communication made by the victim to a sexual assault counselor").

[5] She cites RSA 329:26 (placing the doctor-patient privilege on the same footing as the attorney-client privilege in New Hampshire) and some unspecified portion of the federal "Health Information Portability and Accountability Act."  The court presumes that Bates intended to refer to the "Health Insurance Portability and Accountability Act of 1996," but her citation to 42 U.S.C. § 1320, which is a part of the Social Security Act, leaves things somewhat muddled.

against Raiff, including all medical records; (2) information

from her telephone and computer, specifically passwords to

personal accounts and bank-account information; and (3) phone

records from Verizon.  Regarding the phone records, Bates calls

Raiff's supboena overbroad, contending:

> Plaintiff's phone records will likely show
> communications with health care providers, including
> mental health providers, as well as communications to
> or from her attorney.  The records will also disclose
> who Plaintiff speaks with on a regular basis,
> disclosing the names and phone numbers of her friends
> and family to the person she alleges sexually
> assaulted her, well beyond the time period during
> which this assault occurred.

Pl.'s Mem. of Law (doc. no. 32-1), at 11.  According to Raiff,

Bates lacks standing to move to quash the subpoenas at issue

because she has failed even to allege that any of the materials

he seeks are privileged.  Raiff's point is well taken.

As Magistrate Judge Boal recently explained in an analogous

case:

> Typically, a motion to quash may only be made by
> the party to whom the subpoena is directed.  . . .
> However, if a party seeking to challenge a subpoena
> has a personal right or privilege with respect to the
> requested information, that party may have standing.
> Sterling Merch., Inc. v. Nestle, S.A., 470 F. Supp. 2d
> 77, 81 (D.P.R. 2006); Reliastar Life Ins. Co. v.
> Warrior, No. 06-2486, 2007 WL 2669558, at *4 (D. Kan.
> September 7, 2007).

Shea, 2011 WL 322652, at *3 n.4; see also 11 Moore's Federal

Practice, supra, § 45.50[3].  That said, a "party claiming [a]

privilege has the burden of establishing its existence."  Shea,

2011 WL 322652, at *8 (citing United States v. Lilly, 185 F.R.D. 113, 115 (D. Mass. 1999)).  Here, while Bates's counsel referred to both the attorney-client privilege and the doctor-patient privilege in her letters instructing the SPD and Verizon to not respond to the subpoena, she does not invoke either of those two privileges in her motion to quash.  Given that she has the burden of showing that the information she seeks to protect is privileged, her failure even to mention the relevant privileges in her memorandum of law is a deal breaker.  Bates does make passing reference to a New Hampshire privilege allowing the non-disclosure of confidential communication to sexual assault counselors.  But, it is not clear that a New Hampshire privilege would apply in this federal case in the first instance, see Moses v. Mele, No. 10-cv-253-PB, 2011 WL 2174029, at *5 (D.N.H. June 1, 2011), and, more importantly, Bates does not suggest that she ever saw a sexual assault counselor, much less that any confidential communications she may have made to such a counselor are included in the SPD investigative files.

Absent an effective invocation of privilege, see In re Grand Jury Subpoena (Mr. S.), 662 F.3d 65, 71 (1st Cir. 2011) ("Whatever quantum of proof is necessary to satisfy [the] obligation [to carry the burden of persuasion on privilege] a blanket assertion of privilege is generally insufficient.") (citation omitted), Bates is reduced to relying on an argument

that the material she seeks to protect from disclosure qualifies
as "other protected matter," Fed. R. Civ. P. 45(c)(3)(A)(iii).
But, still, the concept of "other protected matter" must be
understood as meaning material that Bates has a "personal right"
to protect from disclosure.  See Shea, 2011 WL 322652, at *3
n.4.  While Bates identifies any number of authorities that
mention generally various privacy interests, she has failed to
identify any legal basis for claiming a personal right to
prevent disclosure of the material that is the subject of her
motion to quash.[6]  Moreover, Bates's scattershot assertion of a
right to privacy or confidentiality, which does not identify any
specific documents she seeks to protect, significantly
diminishes the court's ability to undertake a meaningful
analysis of her request.  Accordingly, Bates has failed to carry
her burden of showing that she is entitled to an order quashing
the subpoenas Raiff served on the SPD and Verizon.

B. Protective Order

     As an alternative to quashing the subpoenas at issue, Bates
asks the court for a protective order.  However, while she does
identify, in a general way, the categories of information she
seeks to protect, she does not distill those generalities into
any specific language the court might incorporate into a

---

     [6] While she invokes RSA 18-M:8-k, she does not qualify as a
"crime victim" as that term is defined in the statute.

10

protective order.  Moreover, her memorandum of law does not clearly differentiate her request to quash the subpoenas from her request for a protective order.  Raiff responds by arguing that Bates has not established "good cause," Fed. R. Civ. P. 26(c)(1), for the amorphously defined protective order she seeks.

While Raiff devotes considerable attention to his argument on good cause, Bates's request must be denied for a simpler reason.  Specifically, she has not adequately certified that she "has in good faith conferred or attempted to confer with [Raiff] in an effort to resolve the dispute without court action."  Fed. R. Civ. P. 26(c)(1).  In her motion, she states:

> In accordance with Federal Rule of Civil Procedure 26 (c)(1), Plaintiff attempted to resolve this matter without Court action.  Following receipt of the Seabrook Subpoena and Right-to-Know requests, Plaintiff informed Defendants of her position and her intent to file this Motion.  See Exhibit D. Defendants have stated that they will respond but no response has yet been received.  In lieu of a response, Plaintiff received the Verizon subpoena. Plaintiff is against her deadline to file this Motion as to the Seabrook subpoena and Right-to-Know request and accordingly must do so without further negotiations in order to protect her rights.

Pl.'s Mot. to Quash (doc. no. 32) ¶ 16.  The "Exhibit D" to which Bates refers is her counsel's letter to Seabrook's Chief of Police in which counsel: (1) announced her intent to move to quash the subpoena; (2) indicated her suspicion that the court would grant a protective order; and (3) "instruct[ed] [the SPD]

to not respond to [Raiff's] subpoena," Mot. to Quash, Ex. D
(doc. no. 32-4), at 1.

Rather than making any direct contact with Raiff's counsel,
Bates's counsel merely provided Raiff's counsel with a copy of
her letter to Chief Manthorn.  Rule 26(c)(1) requires more;
"[u]nder the rule, the requirement to confer or make a good
faith effort to do so is not satisfied by an exchange of emails
or letters demanding production." Jenks v. N.H. Motor Speedway,
Inc., No. 09-cv-205-JD, 2011 WL 4625705, at *1 (D.N.H. Oct. 3,
2011) (citing Aponte-Navedo v. Nalco Chem. Co., 268 F.R.D. 31,
40 (D.P.R. 2010); Antonis v. Elecs. for Imaging, Inc., No. 07-
cv-163-JL, 2008 WL 169955, at *1 (D.N.H. Jan. 16, 2008).  It is
difficult to imagine that Raiff would not have acceded to a
request from Bates to ask the SPD to redact information such as
passwords and bank-account information from any documents it
produced in response to the subpoena.  But Raiff appears never
to have been given the opportunity to respond to such a request.

In the absence of either an adequate attempt to resolve
this matter without court action or a reasonably specific
indication of what, precisely, the court would put in a
protective order, Bates's request for relief under Rule 26(c)(1)
is denied.  That said, the court strongly encourages the parties
to make a good-faith effort to resolve this issue on their own.

C. Right-to-Know Request

The last two pages of Bates's memorandum of law are devoted to attacking the request for information that Raiff directed to the SPD under New Hampshire's Right-to-Know Law.  She concludes by arguing that "Defendants should be precluded from seeking, obtaining, or using any information from their Right-to-Know Request or it should be limited such as to protect Ms. Bates' privacy rights."  Pl.'s Mem. of Law (doc. no. 32-1), at 15.  The court, however, is at a loss to understand how a right-to-know request propounded by Raiff on the SPD has any place in a discovery dispute between Bates and Raiff under the Federal Rules.  There is a time and a place for the resolution of any dispute arising under RSA chapter 91-A, but because Raiff has not taken legal action to compel the SPD to comply with his right-to-know request, this is neither the time nor the place to adjudicate any party's rights under the Right-to-Know Law.

## Conclusion

For the reasons described above, Bates's motion to quash Raiff's subpoenas, or for a protective order, document no. 32, is denied.  However, because Bates appears to raise some legitimate concerns over the information that could be disclosed pursuant to those subpoenas, the court strongly encourages Bates to make a good faith effort to work with Raiff to limit the

scope of the subpoenas to exclude any information that is privileged, irrelevant, or otherwise beyond the scope of proper discovery.

SO ORDERED.

_____
Landya McCafferty
United States Magistrate Judge

May 11, 2012

cc:   Stephen C. Buckley, Esq.
      Kathleen A. Davidson, Esq.
      Clara Ann Dietel, Esq.
      Steven M. Gordon, Esq.
      Jamie N. Hage, Esq.